250 So.2d 439 (1971)
STATE of Louisiana In the Interest of Michael Thomas EMERSON et al.
No. 4388.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1971.
James Burnett Aime, Asst. Dist. Atty., Parish of Orleans, Juvenile Division, for appellee.
Robert Glass, New Orleans, for appellant.
Before LEMMON, TAYLOR, and STOULIG, JJ.
*440 STOULIG, Judge.
This is an appeal from a decree of the juvenile court adjudging Michael Thomas Emerson to be delinquent. The juvenile was immediately committed to the State Industrial School for an indefinite period; however, he was released on the posting of bond pending the outcome of this appeal.
The uncontradicted testimony in this matter reflects that on October 14, 1969, Michael Thomas Emerson accompanied Nathaniel Parker, another juvenile, to an abandoned warehouse, formerly occupied by Goodwill Industries, for the purpose of securing Parker's jacket which was being worn by a third juvenile, Glen Glover, who was allegedly sleeping in the building. While Parker was endeavoring to awaken Glover, Emerson wandered into another room and discovered certain merchandise. He donned a pair of slacks over his pants and returned to the room occupied by Parker and Glover.
According to Emerson, the pants were too long and too large and he put them on solely to get a laugh out of Parker. Coincidentally with these actions, the police conducted a raid of the building and arrested the three juveniles.
Petitions were filed against the three youths alleging them
"* * * to be delinquent children, R. S. 13:1570,A. (5), by violating Louisiana Revised Statutes 14:69, relative to receiving stolen things, in that they intentionally procured, received or concealed assorted groceries, including gum, meats, candies and cigars, valued at $34.85, belonging to Top Value Food Store, 2432 LaSalle Street, New Orleans, Louisiana, and two (2) pairs boys pants, two (2) boys shirts, two (2) pairs of boys slippers and three pairs of socks, valued at $30.20, belonging to Joe's Bargain Store, 1614 Dryades Street, New Orleans, Louisiana, about 10:00 A.M. October 14, 1969 at 2000 Jackson Avenue New Orleans, Louisiana, under circumstances which indicate that the juveniles knew or had good reason to believe that the articles had been the subject of a theft."
The petition against Glen Glover was dismissed since he had already been committed to the State Industrial School under another petition. At the conclusion of the hearing the judge granted a directed dismissal of the petition against Nathaniel Parker and simultaneously adjudged Michael Emerson to be a delinquent.
It should be noted that no effort was made to prove the theft or possession of the merchandise owned by the Top Value Food Store, or of the dry goods belonging to Joe's Bargain Store, except the pair of slacks put on by the juvenile Michael Emerson.
In order to sustain the adjudgment of Michael Emerson as a juvenile delinquent under LSA-R.S. 13:1570, subd. A(5) it must be established that he did violate LSA-R.S. 14:69 relative to receiving stolen things.
The statute allegedly violated, LSA-R.S. 14:69, defines the crime of receiving stolen things as follows:
"Receiving stolen things is the intentional procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses."
In ascertaining if the conduct of the juvenile constituted a violation of this statute we are restricted solely to the issue of a pair of slacks in the absence of any evidence whatever that this youth possessed other articles of stolen merchandise. The juvenile's violation of the statute must be proved beyond a reasonable doubt. The same degree and character of proof is necessary to adjudge a juvenile in violation of a statute as is required to obtain a conviction of an adult for the same offense.
*441 In discussing the proof required to meet the demands of procedural processes in juvenile hearings this court in the matter of In Re Bordes, 242 So.2d 117, 119 (1971), stated:
"In March of 1970, the Supreme Court of the United States extended the demands of procedural due process in juvenile hearings so as to require proof beyond a reasonable doubt in any such proceeding. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Inasmuch as this measure is one calculated to protect the innocent from conviction and, correspondingly, defines constitutional standards for fair play at trial, we cannot question retroactivity. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L. Ed.2d 1100 (1968)."
We must first look to the elements of the offense which the juvenile is charged with violating. Receiving stolen things is the intentional procuring, receiving, or concealing of a thing of value under circumstances which indicate the offender knew or had good reason to believe that it was the subject of a robbery or theft. Applying the evidence adduced at the hearing toward the substantiation of the elements of the crime, we make the following findings.
Intent is defined as the state of a person's mind which directs his actions toward a specific object or design. Receiving is the acceptance of possession by delivery. By implication it involves a transfer from another individual. In construing this element of the statute, the Supreme Court in State v. Ugarte, 176 La. 54, 145 So. 266, 268 (1932), ruled:
"To constitute the offense, it is not necessary that the goods be received from the thief or from any particular person; it being immaterial from whom they were received. The offense is established if it be shown that the goods were received from any one, if the other essential elements are present. 53 C. J., § 15, p. 507."
There is no evidentiary basis for finding that the juvenile received the pair of slacks allegedly in his possession. On the contrary, his testimony of having found them in the abandoned warehouse is uncontradicted.
Nor do we find Emerson guilty of intentional procurement. The evidence establishes that no effort was made by him to intentionally acquire these slacks (though, unquestionably, the act of putting on the slacks over his pants was intentional), but, rather, that he obtained them by accident and not by design.
Having initially acquired this property unintentionally, a person may nevertheless subsequently be guilty of violating the statute if by intentional concealment he converts it to his own use and enjoyment or prevents its recovery by the lawful owner. In interpreting this provision of the statute in the case of State v. Crum, 255 La. 60, 229 So.2d 700, 701 (1969), the Supreme Court declared:
"A determination of whether stolen property is concealed depends upon the facts of the particular case as they affect the ability of the owner to search for and find it. `Concealing' such property includes hiding, secreting, and keeping it from sight, but also includes conduct which will assist the possessor in converting the property to his own use and enjoyment or which may prevent or hinder its discovery by the owner. See 45 Am.Jur., Receiving Stolen Property, § 3; 76 C.J.S. Receiving Stolen Goods § 7; 2 Brill, Cyclopedia of Criminal Law, § 921; 2 Wharton's Criminal Law and Procedure, § 570 (Anderson's ed.). * * *"
There is no evidence indicative of the juvenile's intent to conceal the stolen property within the contemplation of the statute as expressed in the Crum case.
*442 The actions of the juvenile relative to this aspect of the matter convinces us that he donned a pair of slacks both too large and too long over his existing pants as an adolescent prank for the amusement of his companions and without any intention of retaining their possession or depriving the owner of his property. Such a conclusion is also buttressed by the fact that these pants were so ill fitting as to be of no serviceable use to the juvenile.
Emerson admitted he knew or believed the slacks were stolen, which he concluded from the fact that the price tags were still attached. The mere declaration of the juvenile that he believed the property to be stolen, unsupported by any of the other elements of this offense, is in itself insufficient to constitute a violation of the statute.
The testimony of the owner of Joe's Bargain Store bearing upon the identification of the slacks is indecisive, somewhat confusing, and vague. Based upon the testimony of the various witnesses, there is a conflict as to the color of the allegedly stolen slacks that the juvenile was wearing when the purported identification was made by the owner. For some unaccountable reason and despite the efforts of the attorney for the juvenile to obtain their production into court by a subpoena duces tecum, the slacks were never exhibited during the course of the trial or introduced into evidence. The failure of the State to provide this critical link of evidence was never satisfactorily explained.
Had the same evidence been tendered in connection with an identical charge under similar circumstances in the district court, the accused would have been entitled to a directed verdict for the failure to introduce into evidence the pair of slacks which was the subject of the theft. The same certainty of proof is required in a juvenile proceeding for it to serve as the basis for the adjudgment of delinquency.
In view of our finding that the adjudication of delinquency of Michael Thomas Emerson was predicated upon evidence insufficient to meet the standard of proof required to establish the elements of the offense beyond a reasonable doubt, no need exists to consider the merits of the other specifications of errors relating to the post-adjudication disposition of this matter.
For these reasons, the adjudication of delinquency and order of commitment are annulled and vacated, the appellant discharged, and the petition of the State in the interest of the juvenile-appellant dismissed.
Annulled and vacated.