NO. 12-01-00157-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS 


JAMES THOMAS WELDON,
§
 APPEAL FROM THE 188TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 GREGG COUNTY, TEXAS

 

MEMORANDUM OPINION


 James Thomas Weldon ("Appellant") was convicted by a jury for the offense of murder and
sentenced to twenty-five years of imprisonment. Appellant raises four issues on appeal. We affirm.


Background

 Appellant attended a party at the home of his friend, Carrie, in west Longview, and drank
tequila. Carrie left the party to go to the home of the decedent, Holder, to get drugs. When she did
not return after about forty-five minutes, Appellant called her on her mobile phone, spoke to Holder,
and then heard Carrie scream. Appellant got his pistol, left the house saying he was going to kill
Holder, and went to rescue her. When he got to Holder's house, Carrie and Holder were talking near
her car. Holder ran up to Appellant's car, broke the driver's side window, and began to grab for
Appellant in what Appellant believed was an attempt to assault him. Appellant fired three shots. 
Holder later died from a gunshot wound to the neck. Appellant fled the scene, throwing away the
gun, but was quickly stopped and arrested for shooting Holder. After being interrogated a short
while, Appellant gave a written statement. At trial, Appellant requested the court to suppress his
confession, which was denied. Appellant's self-defense argument was rejected by the jury.


Findings of Fact and Conclusions of Law


 In Appellant's first issue, he contends the trial court erred in failing to file written findings
of fact and conclusions of law following the trial court's denial of his motion to suppress his
statement. On July 10, 2002, this court abated and remanded this cause to the trial court with
instructions that the trial court make and file written findings of fact in accordance with Texas Code
of Criminal Procedure, article 38.22, section 6. The findings of fact and conclusions of law were
filed with this court on August 1, 2002. Weldon v. State, No. 12-01-00157-CR (Tex. App.-Tyler
July 10, 2002, no pet.) (not designated for publication), 2002 WL 1540622. Therefore, Appellant's
first issue is now moot and is overruled. 


Motion to Suppress

 In his second issue, Appellant contends the trial court erred in denying his motion to suppress
his statement to officers after his arrest. Appellant claims that, after his arrest as he drove from the
scene of the shooting, the arresting officer gave him his Miranda (1) warnings and, when asked about
the location of the weapon he had used, he declined to speak with the officers about the gun.

 At the hearing on the motion to suppress Appellant's statement, the officers testified that
Appellant did not request an attorney. Appellant testified that he told the officers when he was
arrested that he did not want to say anything and that he requested an attorney at that time. On cross-examination, Appellant admitted that when Officer Taylor spoke to him at the police station, he did
not ask for an attorney because Taylor told him that his statement would benefit him. Appellant
admitted he understood, signed the written Miranda warnings and voluntarily gave his statement to
Taylor.

 The trial court, in its "Findings of Fact and Conclusions of Law on Defendant's Motion to
Suppress," specifically found that the officers' testimony was more credible than Appellant's
testimony. The trial court also found that Appellant did not invoke his right to counsel prior to giving
his written statement. The trial court further found that, although Appellant did express his desire
to remain silent at the time of arrest, consistent with Maestas v. State, 987 S.W.2d 59, 62 (Tex. Crim.
App.), cert. denied, 582 U.S. 834, 120 S. Ct. 93, 145 L. Ed. 2d 79 (1999), the police waited a
sufficient amount of time, three hours, before resuming questioning. Id.

Standard of Review

 A trial court's ruling on a motion to suppress is reviewed by an abuse of discretion standard. 
Jackson v. State, 33 S.W.3d 828, 838 (Tex. Crim. App. 2000); Oles v. State, 993 S.W.2d 103, 106
(Tex. Crim. App. 1999); Maddox v. State, 682 S.W.2d 563, 564 (Tex. Crim. App. 1997). The trial
court is "the sole judge of the weight and credibility of the evidence, and the trial court's finding will
not be disturbed on appeal absent a clear abuse of discretion." Wood v. State, 18 S.W.3d 642, 646
(Tex. Crim. App. 2000). The abuse of discretion standard means that a reviewing court will uphold
a trial court's decision if that decision is within "the zone of reasonable disagreement." Salazar v.
State, 38 S.W. 3d 141, 153 (Tex. Crim. App. 2001).


 In a hearing on a motion to suppress a defendant's statement, the trial court . . . is the sole trier of fact
and judge of the credibility of the witnesses and the weight to be given their testimony. Accordingly,
the judge may believe or disbelieve all or any part of the witness's testimony, even if that testimony
is not controverted. This is so because it is the trial court that observes first hand the demeanor and
appearance of a witness, as opposed to an appellate court which can only read an impersonal record.



State v. Ross, 32 S.W.2d 853, 855 (Tex. Crim. App. 2000).

 In viewing the evidence in the light most favorable to the trial court's ruling, we note that the
trial court found that (1) Appellant did not request an attorney, (2) Appellant was Mirandized both
at the time of his initial stop and prior to giving his statement, and (3) Appellant signed and initialed
the waiver of rights form. The trial court also found that, after Appellant gave his statement, he
signed the statement and initialed each paragraph. The trial court further found the officers waited
a sufficient time, three hours, between the initial stop when Appellant indicated he did not want to
talk and when Appellant was subsequently questioned at the police station. The trial court also found
that the police "scrupulously honored" Appellant's right to remain silent prior to resuming
questioning of Appellant, pursuant to the five criteria enunciated in Michigan v. Mosley, 423 U.S.
96, 103, 96 S. Ct. 321, 326, 46 L. Ed. 2d 313 (1975); see also Maestas, 987 S.W.2d at 62.

Applicable Law

 In Maestas, the defendant was arrested, advised of her Miranda rights, and stated she did not
want to talk to the police. The next day, after additional investigation, the police again Mirandized
her, and asked her additional questions. Maestas, 987 S.W.2d at 62. At that time, Maestas agreed
to talk to the police, and, subsequently, gave her statement admitting her crime. Maestas never
requested an attorney. The court of criminal appeals based its opinion on the United States Supreme
Court's decision in Mosley, which held that a defendant's claim of his right not to give a statement
does not constitute a "blanket prohibition against the taking of voluntary statements or a permanent
immunity from further interrogation . . . ." Mosley, 423 U.S. at 103, 96 S. Ct. at 326. The Supreme
Court focused on whether the defendant was notified of "his right of silence and assuring that the
exercise of the right will be scrupulously honored." Id. (quoting Miranda, 384 U.S. at 479, 86 S. Ct.
at 1632). The Supreme Court noted that


 [t]he critical safeguard identified in the passage at issue is a person's "right to cut off questioning." Id.
at 474, 86 S. Ct. at 1627. Through the exercise of his option to terminate questioning he can control
the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The
requirement that law enforcement authorities must respect a person's exercise of that option counteracts
the coercive pressures of the custodial setting. We therefore conclude that the admissibility of
statements obtained after the person in custody has decided to remain silent depends under Miranda
on whether his "right to cut off questioning" was "scrupulously honored."



Mosley, 423 U.S. at 103-04, 96 S. Ct. at 326.

 The court of criminal appeals noted five factors from Mosley which are to be considered in
assessing whether a defendant's assertion of his right to silence was "scrupulously honored":


 (1) whether the suspect was informed of his right to remain silent prior to the initial questioning; (2)
whether the suspect was informed of his right to remain silent prior to the subsequent questioning; (3)
the length of time between initial questioning and subsequent questioning; (4) whether the subsequent
questioning focused on a different crime; and (5) whether police honored the suspect's initial
invocation of the right to remain silent. Thus Mosley created an ad hoc test in which "courts must
evaluate the facts of each case to determine if the resumption of police interrogation was consistent
with scrupulous observance of the right to cut off questioning." United States v. Alvarado-Saldivar,
62 F.3d 697, 699 (5th Cir. 1995).



Maestas, 987 S.W.2d at 62.

 Consistent with Maestas, we evaluate the facts in this case, in light of the five Mosley factors
to determine whether police "scrupulously honored" Appellant's right to silence. Alvarado-Saldivar,
62 F.3d at 699; Maestas, 987 S.W.2d at 62. Upon stopping Appellant, officers informed him of his
right to remain silent pursuant to Miranda. Officers immediately stopped any further questioning
of Appellant at the scene of his arrest after, when he was asked about the location of the murder
weapon, Appellant stated he did not want to talk about location of the weapon at that time. Later,
at the police station, when another officer spoke with Appellant, the officer began by again advising
Appellant of his Miranda rights. Thus, the police actions are consistent with a "scrupulous
honoring" of Appellant's right to silent as outlined in first two Mosley factors.

 The third Mosley factor is the length of time between the initial questioning and the
subsequent questioning. The purpose of this third factor is to prevent police from abusing a
defendant by repeated interrogation of the accused for the purpose of wearing down his resistance
so as to "overcome free choice in producing a statement after the privilege has been invoked." 
Mosley, 423 U.S. at 101, 96 S. Ct. at 325; compare with United States v. Hernandez, 574 F.2d 1364,
1369 (5th Cir. 1978). In the present case, the police did not approach Appellant to question him
again for approximately three hours after he had initially indicated he did not want to talk about the
gun's location. The passage of time was longer than the two hours found sufficient in Mosley. 
Mosley, 423 U.S. at 105, 96 S. Ct. at 329; see also Kelly v. Lynaugh, 862 F.2d 1126 (5th Cir. 1988),
cert. denied, 492 U.S. 925, 109 S. Ct. 3263, 106 L. Ed. 2d 608 (1989); Maestas, 987 S.W.2d at 63. 
Thus, the passage of time was sufficient to obviate the influence of the previous police questioning,
and was sufficient to allow Appellant an opportunity to consider whether to speak to the police. As
such, the interval between the first and second police inquiries fully comports with the third Mosley
factor.

 The fourth Mosley factor is whether subsequent questioning of Appellant focused on a
different crime than the one the initial interrogation involved. In the present case, the two instances
of questioning Appellant involved the same offense. However, "this factor alone is not sufficient to
find a violation of . . . Miranda rights under Mosley." Jackson v. Wyrick, 730 F.2d 1177, 1180 (8th
Cir. 1984). Therefore, although the fourth Mosley factor was not met, that is nonetheless insufficient
alone to violate a finding of a "scrupulous honoring" of Appellant's rights.

 The fifth Mosley factor is whether the police honored Appellant's initial invocation of his
right to silence. After Appellant was arrested and told police that he did not want to talk about the
gun, the police immediately terminated their questioning of him. Thus, the fifth factor weighs in favor
of the finding that the police "scrupulously honored" Appellant's right to remain silent.

 Taken together, we hold that the facts support the trial court's finding that the police
"scrupulously honored" Appellant's right to silence. (2) The trial court did not abuse its discretion in
denying Appellant's motion to suppress, as the court's findings are supported by the testimony of the
officers. See Wood v. State, 18 S.W.3d at 646. We overrule Appellant's second issue. 

Omission of Manslaughter Charge

 Appellant contends, in his third issue, that the trial court erred in failing to include a charge
of the lesser included offense of manslaughter in the jury charge. Appellant specifically requested
that a charge of manslaughter be included in the charge.

Applicable Law

 A person commits the offense of murder, as it applies in the present case, if he "intentionally
or knowingly causes the death of an individual." Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003). 
A person commits the offense of manslaughter if he "recklessly causes the death of an individual."
Tex. Pen. Code Ann. § 19.04(a) (Vernon 2003).

 Manslaughter can be a lesser included offense to a charge of murder under section 37.09,
subsections (1) and (3) of the Texas Code of Criminal Procedure because it "is established by proof
of the same or less than all the facts required to establish the commission of the offense charged" and
"differs from the offense charged only in respect that a less culpable mental state suffices to establish
its commission." Lawson v. State, 64 S.W.3d 396, 397 (Tex. Crim. App. 2001); Tex. Crim. Proc.
Code Ann. § 37.09(1),(3) (Vernon 1981). However, if the lesser mental state required for a potential
lesser included offense is not established by the evidence during the trial for the charged offense, a
jury charge on the lesser included offense will not be included in the jury charge. Mathis v. State,
67 S.W.3d 918, 926 (Tex. Crim. App. 2002); Sanford v. State, 634 S.W.2d 850, 852 (Tex. Crim.
App. 1982); Graham v. State, 950 S.W.2d 724, 730 (Tex. App.-Beaumont 1997), pet. dism'd per
curiam, 991 S.W.2d 802 (Tex. Crim. App. 1998).

 Whether a lesser included offense instruction must be given is determined by a two-step
analysis. See Aguilar v. State, 682 S.W.2d 556 (Tex. Crim. App. 1985); Royster v. State, 622
S.W.2d 442 (Tex. Crim. App. 1981). The Aguilar-Royster analysis first requires 


 that the lesser included offense is included within the proof necessary to establish the offense charged
and second, there must be some evidence in the record that if the defendant is guilty, he is guilty only
of the lesser offense. The "guilty only" rule of law has been interpreted by this Court to mean that if
the evidence only raises the issue that the accused is guilty of the greater offense, or not guilty at all,
an instruction on a lesser included offense need not be given. On the other hand, if the evidence raises
the issue that, if guilty, the defendant is only guilty of the lesser offense, the instruction should be given.



Tompkins v. State, 774 S.W.2d 195, 210 (Tex. Crim. App. 1987). A trial court, in applying the two-pronged test, "should make a determination as to whether the evidence of the lesser offense would
be sufficient for a jury rationally to find that the defendant is guilty only of that offense, and not the
greater offense." Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1983). Therefore,
a defendant is entitled to a charge on the lesser included offense of involuntary manslaughter "if
there is some evidence that would permit a jury rationally to find that appellant recklessly caused the
death of the deceased, but not intentionally." Adanandus v. State, 866 S.W.2d 210, 232 (Tex. Crim.
App. 1993).

Application

 Appellant testified on direct examination that, when Holder broke the driver's side window
and reached in towards him, he leaned over towards his pistol on the passenger side of the floor of
his car, "grabbed the gun, and I just started firing toward the window." On cross-examination, he
agreed that he "intentionally and knowingly pulled the trigger on [his] gun to shoot. . ." Holder. 
Appellant also said that he "just pointed the gun in [Holder's] direction and started shooting."

 Appellant's drinking companions testified that, after calling Carrie on her mobile phone and
hearing her scream, Appellant grabbed his gun and ran out of the house saying he was going to kill
Holder.

 There was no evidence in the record from which a rational jury could infer Appellant's
shooting Holder was merely reckless and not intentional. Indeed, Appellant's testimony was that 
he did intentionally shoot Holder. Therefore, the trial court did not err in denying the requested
manslaughter charge. Appellant's third issue is overruled.


Inclusion of Charge on Unlawfully Carrying a Weapon

 In his fourth issue, Appellant contends the trial court committed reversible error in charging
the jury that, as a matter of law, Appellant was committing the offense of unlawfully carrying a
weapon at the time of the shooting.

 The transcript of the hearing on the jury charge is not clear whether Appellant lodged and
maintained an objection to the portion of the charge related to unlawfully carrying a weapon. 
Initially, Appellant objected to the subsequent paragraph (3) in the jury charge which regarded seeking
an explanation from another. The trial court agreed to remove that subsequent paragraph. After the
State asked for clarification of what specifically was to be excluded, Appellant then suggested that
the paragraph as to unlawfully carrying a weapon also be deleted because he believed it relevant only
in the context of the paragraph regarding seeking an explanation, which the court had agreed to 
delete. When the court disagreed and said it would leave in both paragraphs, Appellant responded
that he would withdraw his objection. The court then stated it was overruling Appellant's "total
objection" and kept the two paragraphs in the charge.

 As it is unclear whether Appellant's objection was withdrawn, or if it was directed at the now-complained-of unlawfully carrying a weapon paragraph, in the interest of justice, we shall give
Appellant the benefit of the discussion and examine whether inclusion of the instruction was error.

 On appeal, Appellant further argues in this issue that, because of the "Texas frontier heritage,"
there are numerous statutory and common law exceptions (4) to the prohibition to carrying a weapon
without a permit, such as traveling. Finally, Appellant argues that the charge "apparently reflected
the trial court's conclusion that Appellant was unlawfully carrying a weapon at the time of the
shooting." Appellant then argues on appeal that there was no limiting instruction as to the offense of
unlawfully carrying a weapon. 

 Appellant's defense to the charge of murder was that he went to the scene to rescue Carrie
from being sexually assaulted by Holder. When he arrived, he shot Holder because Holder broke the
side window of Appellant's car and was reaching for Appellant. Holder did not sexually assault
Carrie; indeed, they were calmly talking when Appellant arrived. Appellant stated that he believed
Holder was going to "strangle me or kill me somehow" when Holder broke Appellant's window and
grabbed for him. See Tex. Pen. Code Ann. § 9.32(a)(3)(A) (Vernon 2003).

 Section 9.31 of the Penal Code establishes the parameters of self-defense, and states that


 "(b) The use of force against another is not justified:

 . . . .

 "(5) if the actor sought an explanation from or discussion with the other person concerning the
actor's differences with the other person while the actor was:

 "(A) carrying a weapon in violation of Section 46.02 . . ."



Tex. Pen. Code Ann. § 9.31(b)(5)(A) (Vernon 2003).

 Section 46.02(a) of the Penal Code provides that a person commits an offense if he carries
"on or about his person" a handgun. Tex. Pen. Code Ann. § 46.02(a) (Vernon 2003). Significantly,
Appellant testified that he did not possess a concealed handgun license, pursuant to Subchapter H,
Chapter 411 of the Government Code.

 The testimony regarding the shooting centered around Appellant's possession and use of a
firearm, and was admitted without objection. Further, the defensive theory of the case was self-defense, about which the issues of justification of the use of force and the use of a weapon are
relevant. The issues being relevant and raised by the testimony, we hold that the trial court did not
commit reversible error in including these issues in the jury charge.

 Appellant further contends in this same issue that no limiting instruction was given as to the
offense of unlawfully carrying a weapon. At trial, Appellant did not request an extraneous offense
limiting instruction as to the reference to unlawfully carrying a weapon. Tex. R. Evid. 105(a).
Failure to request a limiting instruction in the jury charge on an extraneous offense, or to object to
its omission from the jury charge waives the error on appeal. Williams v. State, 508 S.W.2d 83, 84
(Tex. Crim. App. 1974). Further, failure to include a limiting instruction on an extraneous offense
is not fundamental error. Id. Appellant's fourth issue is overruled. 


Conclusion


 Having overruled Appellant's four issues, the judgment of the trial court is affirmed.



 SAM GRIFFITH 

 Justice



Opinion delivered May 30, 2003.

Panel consisted of Worthen, C.J., and Griffith, J.


















(DO NOT PUBLISH)
1. Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
2. As the court wrote in Mosley, 


 [t]his is not a case, therefore, where the police failed to honor a decision of a person in custody to
cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting
in repeated efforts to wear down his resistance and make him change his mind. In contrast to such
practices, the police here immediately ceased the interrogation, [and ]resumed questioning only
after the passage of a significant period of time and the provision of a fresh set of warnings . . . .


Mosley, 423 U.S. at 105-06, 96 S. Ct. at 327.
3. The two paragraphs in question are as follows:

 Our law provides that it is unlawful for a person to intentionally, knowingly, or recklessly
carry a handgun on or about his person.

 While a defendant has the right to seek an explanation from or discussion with another
concerning a difference with the other person, the use of force against another is not justified if the
defendant sought an explanation from or discussion with another concerning a difference with the
other person while the defendant was unlawfully carrying a handgun.
4. Appellant did not raise this argument at trial; therefore, because it is different from the objection raised at
trial, it is waived. Harris v. State, 784 S.W.2d 5, 14 (Tex. Crim. App. 1989).